UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

MACK MATTHEWS,           )
                         )
    Plaintiff,           )
                         )       No. 1:14-0048
v.                       )       Senior Judge Haynes
                         )
OFFICER BULLINGTON, et al., )
                         )
    Defendants.          )

# MEMORANDUM

Plaintiff, Mack Matthews, an inmate at South Central Correctional Facility ("SCCF") in Clifton, Tennessee, filed this pro se action under 42 U.S.C. § 1983 against the Defendants Corrections Corporation of America ("CCA") and Warden Arvil Chapman ("Warden Chapman").[1] Plaintiff asserts claims under the Eighth and First Amendments. Plaintiff alleges that Defendants CCA and Warden Chapman were deliberately indifferent to a serious risk to Plaintiff's safety that caused Plaintiff to be assaulted by other inmates on December 20, 2013, and that Defendant Chapman retaliated against him for filing a grievance by not allowing Plaintiff to use his "television, proper legal assistance, regular use of the telephone, nor a job" while confined in segregation following the assault (Docket Entry No. 1).

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 53), contending that Defendants may not be held liable under *respondeat superior* as Plaintiff failed to makes any specific allegation against Defendants, Plaintiff failed to produce evidence of deliberate

---

[1] Defendants State of Tennessee and Matt Bullington were dismissed from this action. (Docket Entry No. 34).

indifference and Plaintiff failed to demonstrate retaliation by Chapman. Plaintiff Matthews did not file a resposne.

For the reasons set forth below, the Court concludes that based upon the undisputed facts Plaintiff failed to show that Defendants acted with deliberate indifference towards his safety or that Defendants retaliated against him for exercising a protected right and therefore Defendants' motion for summary judgment should be granted.

### A. Findings of Fact[2]

On August 29, 2013, Plaintiff Matthews requested that he be placed into protective custody. As grounds, Matthews reported that over two months earlier, on June 28, 2013, two inmates had threatened him. Pursuant to a written policy then in effect at SCCF, a prompt inquiry was conducted by SCCF officials to determine whether protective services should be provided to Plaintiff Matthews. Pursuant to the policy of the Tennessee Department of Correction, an inmate can be placed in protective custody only when there is full documentation that such action is warranted and no reasonable alternatives are available. SCCF did not itself house protective custody inmates. Whenever an inmate confined at SCCF was determined to need protective custody placement, that inmate was placed into segregation until he could be transferred to another correctional facility that did house protective custody inmates.

Pursuant to policy, Unit Manager Ben Killingsworth was assigned to conduct the protective custody investigation to determine whether Plaintiff Matthews needed to be placed into protective

---

[2]Defendants filed contemporaneously with their motion for summary judgment a statement of undisputed facts (Docket Entry No. 58), in accordance with Local Rule 56.01(b). Plaintiff has not filed a response to Defendants' statement of undisputed facts. Accordingly, Defendants' proffered statements of fact are undisputed for purposes of summary judgment. Local Rule 56.01(g).

custody. Killingsworth thoroughly interviewed Plaintiff Matthews concerning his reasons for requesting protective custody. Matthews informed Killingsworth that on June 28, 2013, Matthews had been threatened and assaulted by two inmates who went by the aliases of "Big O" and "Crow." Matthews could not identify these two inmates any further or provide any further identifying information about them. Matthews stated that this threat against him resulted from Matthews's refusal to "stick" another inmate at the facility where he had been confined before coming to SCCF.

As part of his investigation, Killingsworth attempted to identify the inmates called "Big O" and "Crow." He determined that "Big O" was an inmate who had died on September 1, 2013. Killingsworth was unable to determine the identity of the inmate who went by the nickname "Crow." As a result of his inquiry, Killingsworth learned that Plaintiff Matthews had been involved in some kind of altercation while an inmate at West Tennessee State Prison ("WTSP") in September 2012, which led to his being placed in protective custody while at WTSP. Killingsworth was unable to discover any further information regarding this incident. In compliance with SCCF policy, Killingsworth completed an inquiry report and provided this report to the protective services panel at SCCF.

On September 9, 2013, pursuant to existing policy, a protective custody hearing was conducted concerning Plaintiff's request for protective custody placement. Plaintiff Matthews participated in this hearing but could not identify who inmate "Crow" was. Plaintiff Matthews also did not identify any other inmates whom he feared, and he provided the hearing panel no more information regarding the alleged threats than he had provided to Officer Killingsworth.

Based on Killingsworth's investigative report and Plaintiff's testimony at the protective custody hearing, the hearing panel concluded that the evidence failed to demonstrate that a vital

3

threat to Plaintiff Matthews existed. Therefore, the panel decided that Matthews did not require protective custody. Matthews was taken out of segregation and returned to the general population at SCCF on September 19, 2013.

For a period of just over three months following the protective custody hearing, Plaintiff Matthews reported no new threats, nor did he provide Defendants with any further information regarding the threats that he had allegedly received in June 2013.

On December 20, 2013, three inmates physically assaulted Matthews and stabbed him six times. SCCF personnel immediately escorted Matthews to the medical clinic at SCCF and thereafter transported him to Wayne Medical Center where he received treatment for his injuries. When Matthews returned to SCCF, he was placed in segregation to protect him from any further incidents. On December 30, 2013, SCCF held a protective services hearing and determined that, because Plaintiff Matthews had been attacked and could be in danger of another attack in the future, he should be placed into protective custody and moved to another correctional facility.

Matthews remained in segregation at SCCF awaiting transfer to a facility that housed protective custody inmates. Shortly after Matthews was placed in segregation at SCCF, cable television was turned off in all of the segregation cells at SCCF. This was done in order to make the practice followed at SCCF consistent with the practices at other CCA and TDOC facilities. Since that change, cable television has not been provided in segregation cells at SCCF.

Following his assault on December 20, 2013, Plaintiff Matthews filed four grievances at SCCF. On December 23, 2013, Matthews filed a grievance regarding the December 20, 2013, assault. He filed a second grievance on January 1, 2014, claiming that his cell was a fire hazard. He filed a third grievance in February 2014 unrelated to any claim in this case. Finally, Matthews filed

a fourth grievance on March 7, 2014, complaining that his cable television had been turned off "per Warden Chapman." (Docket Entry No. 56 at 2).

On May 9, 2014, Plaintiff Matthews was transferred from SCCF to the Morgan County Correctional Complex.

### B. Conclusions of Law

Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). The opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Where, as here, the non-moving party does not formally oppose the motion for summary judgment, a court "may-- grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Plaintiff does not makes any specific allegation against CCA in his complaint. The Court therefore infers that Plaintiff's claim against CCA is based upon the fact that CCA operates SCCF and employs the correctional personnel who run this facility. Yet, it is well settled that Defendants cannot be held liable under 42 U.S.C. § 1983 solely on a *respondeat superior* or vicarious liability theory. Monell v. Dep't. of Social Servs. of New York, 436 U.S. 658, 691-95 (1978). In order to hold a corporation performing a traditional state function liable, a plaintiff must show that a policy or well-settled custom of the company was the "moving force" behind the alleged deprivation of his rights. Miller v. Sanilac County, 606 F.3d 240, 254-55 (6th Cir. 2010). Here, Plaintiff Matthews

5

failed to mention CCA in the body of his complaint and makes no assertion regarding any policy or custom of this Defendant.

Accordingly, to the extent that Plaintiff seeks to hold CCA or Warden Chapman vicariously liable for the acts of others under a theory of *respondeat superior*, Plaintiff's claims should be dismissed.

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment, and prison officials' "deliberate indifference to the health or safety of an inmate" violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

To show "deliberate indifference," the Plaintiff must demonstrate that the Defendants knew of and disregarded an excessive risk to inmate health or safety. This showing has both an objective and a subjective element. Objectively, a plaintiff must demonstrate that the defendant had actual knowledge of facts from which the inference could be drawn that a substantial risk of serious harm existed. Subjectively, Plaintiff must demonstrate that the Defendant actually drew this inference. Taylor v. Little, 58 F. Appx. 66, 67 (6th Cir. 2003). On the other hand, a prison official who is unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it. Bishop v. Hackel, 636 F.3d 757, 766-67 (6th Cir. 2011).

Here, Plaintiff Matthews requested protective custody placement in August 2013 based upon threats allegedly made against him by two inmates named "Big O" and "Crow" approximately two months earlier in June 2013. Upon his request for protective custody placement, Plaintiff Matthews was placed in segregation temporarily to permit an investigation and hearing on his request. Plaintiff was unable to identify the two inmates who had threatened him other than by their nicknames

referenced above. The investigation established that the inmate known as "Big O" had died during the intervening period since making the alleged threat against Plaintiff. Despite an investigation, prison officials were unable to identify the inmate who allegedly went by the nickname "Crow." In keeping with facility policies, a hearing was conducted at which Plaintiff appeared and participated. At this hearing, Plaintiff was unable to provide any other information that would substantiate the existence of a current serious threat against his safety. Based upon the investigation and this hearing, Defendants concluded that there was insufficient evidence of a serious risk as to Plaintiff Matthews's safety to support his placement in protective custody. Plaintiff was taken out of segregation and returned to the general population of the prison on September 19, 2013.

For a period of three months thereafter, Plaintiff reported no new threats and reported nothing else that would suggest a risk to his safety. Then, on December 20, 2013, Plaintiff Matthews was assaulted and stabbed by three inmates.

Based upon the foregoing undisputed evidence, the Court concludes that no reasonable finder of fact could conclude that Defendants had actual knowledge of facts supporting the inference that Plaintiff Matthews was exposed to a substantial risk of serious harm, or that Defendants actually drew this inference and were willfully indifferent to such a risk to Plaintiff. Therefore, the Court concludes that Plaintiff's claim against CCA and Defendant Chapman for willful indifference to a serious risk of harm should be dismissed.

Finally, Plaintiff Matthews alleges that Defendant Chapman retaliated against him for filing grievances by depriving him of television, proper legal assistance, regular use of a telephone and a job while confined in segregation following his December 2013 assault. The undisputed evidence shows that shortly after Plaintiff Matthews was transported to segregation for his safety, all of the

referenced above. The investigation established that the inmate known as "Big O" had died during the intervening period since making the alleged threat against Plaintiff. Despite an investigation, prison officials were unable to identify the inmate who allegedly went by the nickname "Crow." In keeping with facility policies, a hearing was conducted at which Plaintiff appeared and participated. At this hearing, Plaintiff was unable to provide any other information that would substantiate the existence of a current serious threat against his safety. Based upon the investigation and this hearing, Defendants concluded that there was insufficient evidence of a serious risk as to Plaintiff Matthews's safety to support his placement in protective custody. Plaintiff was taken out of segregation and returned to the general population of the prison on September 19, 2013.

For a period of three months thereafter, Plaintiff reported no new threats and reported nothing else that would suggest a risk to his safety. Then, on December 20, 2013, Plaintiff Matthews was assaulted and stabbed by three inmates.

Based upon the foregoing undisputed evidence, the Court concludes that no reasonable finder of fact could conclude that Defendants had actual knowledge of facts supporting the inference that Plaintiff Matthews was exposed to a substantial risk of serious harm, or that Defendants actually drew this inference and were willfully indifferent to such a risk to Plaintiff. Therefore, the Court concludes that Plaintiff's claim against CCA and Defendant Chapman for willful indifference to a serious risk of harm should be dismissed.

Finally, Plaintiff Matthews alleges that Defendant Chapman retaliated against him for filing grievances by depriving him of television, proper legal assistance, regular use of a telephone and a job while confined in segregation following his December 2013 assault. The undisputed evidence shows that shortly after Plaintiff Matthews was transported to segregation for his safety, all of the

cable television was turned off in the segregation cells of SCCF. This was done to make the practice at SCCF consistent with the practice followed at all other CCA and TDOC facilities. In addition, the record reflects that Plaintiff Matthews was allowed access to the telephone, legal assistance and a job to the same extent as any other inmate held in segregation, and was not discriminated against in any way. (Docket Entry No. 54 at 3).

Accordingly, based upon the undisputed facts, the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 53) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the  21st  day of March, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge